## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**TH AGRICULTURE & NUTRITION, L.L.C.,**

       **Plaintiff,**

       **v.**                             **Case No.  05-2423-JWL**

**ACE EUROPEAN GROUP LIMITED, et al.,**

       **Defendants.**

_____

## MEMORANDUM AND ORDER

In this lawsuit plaintiff TH Agriculture & Nutrition, L.L.C. (THAN) seeks damages and declaratory relief for the defendants' alleged breach of insurance policies arising from thousands of lawsuits brought against THAN throughout the United States relating to the claimants' exposure to asbestos.  Defendants are thirteen European insurance companies which subscribed to the primary and excess general liability insurance policies known as the World-Wide Liability Insurance Programme (the Programme).  The Programme provided worldwide coverage to Koninklijke Philips Electronics N.V. (Philips) and its direct and indirect subsidiaries, including THAN.

This matter comes before the court on the motions to dismiss of Certain Insurers,[1]

_____

[1] Certain Insurers include defendants ACE European Group Limited, AGF Insurance Ltd., AXA Global Risks (UK) Ltd., AXA Schade N.V., CGU International Insurance, Chubb Insurance Company of Europe S.A., Fortis Corporate Insurance N.V., Generali Schadeverzekering Maatschappij, N.V., Gerling-Konzern Allgemeine Versicherungs-AG, HDI Vezerkeringen N.V., and Winterthur Schadeverzekering Maatschappij N.V.

Royal & Sun Alliance Insurance (Global) Ltd. (Royal), and XL Insurance Company Ltd. (XL) (Docs. 24, 26 & 29), and THAN's related motion to strike the declaration of Th. M. de Boer (Doc. 50).   For the reasons explained below, defendants motions are granted on the grounds of a lack of personal jurisdiction and improper venue.   THAN's motion to strike is denied in the sense that the court will not strike Mr. de Boer's affidavit but the motion is granted in the sense that the court will allow THAN to file a surreply; therefore, the court will consider the contents of THAN's surreply.

## FACTUAL BACKGROUND

THAN is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Lenexa, Kansas.   THAN is a subsidiary of Philips Electronics North America Corporation (PENAC), which in turn is a subsidiary of Philips. Defendants consist of thirteen insurance companies, including five from The Netherlands, six from the United Kingdom, one from Germany, and one of which is incorporated in Belgium with its principal place of business in The Netherlands.   Defendants provided worldwide primary and excess coverage to Philips for the period from December 31, 1997, through December 31, 2001.   THAN is insured under the policies by virtue of its nature as a direct or indirect subsidiary of Philips.

THAN has been named as a defendant or co-defendant in more than 14,000 asbestos claims filed in various state and federal courts across the United States.   Some of those claims have been dismissed, THAN has settled other claims, and more than 11,000 claims remain

2

pending against THAN.   Certain Insurers and Royal have instituted litigation against Philips, PENAC, and THAN in The Netherlands seeking confirmation of their rescission of the Programme on the grounds that Philips improperly failed to disclose relevant information known to it regarding the asbestos claims.   Meanwhile, THAN brought this lawsuit seeking indemnification and its costs of defense relating to the asbestos claims.

Defendants now move to dismiss THAN's claims against them.   They ask the court to dismiss this case on the following grounds: (1) lack of personal jurisdiction; (2) improper venue in light of a forum selection clause designating The Netherlands as the jurisdiction in which to resolve the parties' disputes; and (3) *forum non conveniens*.[2]

## ANALYSIS

For the reasons explained below, the court concludes that it lacks personal jurisdiction over defendants because although they have minimum contacts with the state of Kansas, those contacts are so minimal that asserting jurisdiction over them would violate traditional notions of fair play and substantial justice largely because the international nature of this dispute implicates the policy interests of The Netherlands and because of the interstate judicial system's interest in efficiently resolving this dispute to avoid duplicative litigation.   Even if this court could exercise personal jurisdiction over defendants, it would dismiss this case for

---

[2] Because the court finds that its resolution of these three arguments is dispositive of the matter, the court declines to consider defendants' arguments to dismiss or stay the case based on considerations of abstention and the first-to-file rule.

improper venue because the law of The Netherlands governs the interpretation of the forum selection clause and, under Dutch law, the clause is mandatory and enforceable.   The court further notes that it rejects defendants' *forum non conveniens* arguments.

**A.**   **Personal Jurisdiction**

"The burden of establishing personal jurisdiction over the defendant is on the plaintiff." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). When the evidence presented on the motion to dismiss consists of affidavits and other written materials, as is the case here, the plaintiff need only make a prima facie showing of personal jurisdiction.   *Id.*   "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."   *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).   "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable."   *Id.* (quotation omitted).   The court "must resolve all factual disputes in favor of the plaintiff."   *Bell Helicopter Textron*, 385 F.3d at 1295.

To obtain personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005).   "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue."   *OMI Holdings*,

149 F.3d at 1090; *accord Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "[A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry." *Pro Axess*, 428 F.3d at 1276. The court first considers whether the defendant has minimum contacts with the forum state in the sense that "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If the defendant's actions create sufficient minimum contacts, the court then considers whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

### 1.    Minimum Contacts

The "minimum contacts" standard may be met in either of two ways. *Bell Helicopter Textron*, 385 F.3d at 1296. The court may exercise general jurisdiction if the defendant has "continuous and systematic general business contacts" with the forum state. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). Or, if the defendant has purposefully directed its activities at residents of the forum, the court may exercise specific jurisdiction in cases that arise out of or relate to those activities. *Id.*

5

(quoting *Burger King*, 471 U.S. at 472-73).   In this case, THAN has made no colorable showing that any of the defendants have continuous and systematic contacts with Kansas.   Thus, the court confines its analysis to the minimum contacts inquiry for specific jurisdiction.

To support specific jurisdiction, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).   This requirement precludes personal jurisdiction as the result of "random, fortuitous, or attenuated contacts."   *Burger King*, 471 U.S. at 475.   "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant [it]self that create a substantial connection with the forum state."   *Pro Axess*, 428 F.3d at 1277 (quotation omitted).   "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case."   *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *accord Benton v. Gameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 1826 (2005).

In this case, defendants' sole relevant contact with Kansas is the Programme (i.e., the insurance policies) which forms the basis for THAN's claims against them.   This Programme raises two different arguable contacts with the state of Kansas.   First, the Programme provided Philips and its subsidiaries with worldwide insurance coverage.   In this respect, this case is analogous to *OMI Holdings*, 149 F.3d at 1086.   In *OMI Holdings*, the insured was an Iowa corporation with its principal place of business in Minnesota which sought to invoke

6

jurisdiction in Kansas over a Canadian insurer.  *Id.* at 1089.  The lawsuit which gave rise to the

insured's claim against the Canadian insurer had been litigated in the United States District

Court for the District of Kansas.  *Id.*  The defendant insurers had agreed to defend certain

claims against the plaintiff in any United States forum.  *Id.* at 1092.  On this basis alone, the

Tenth Circuit held that "by contracting to defend the insured in the forum state, the insurer

creates some contact with the forum state," although "sole reliance on the territory of

coverage clause creates contacts which are qualitatively low on the due process scale."  *Id.* at

1095.  The court further held that the insured's claim "clearly arose out of Defendants' forum-

related activity" inasmuch as the defendants' contacts with Kansas arose when the companies

issued policies agreeing to defend the plaintiff insured from suit in Kansas and the plaintiff was

complaining of the defendants' wrongful refusal to defend plaintiff under the policies.  *Id.*

Defendants' asserted contacts with Kansas are similar in this case in the sense that they

issued insurance policies with a worldwide coverage territory, although those contacts are

qualitatively different because the Tenth Circuit's reasoning in *OMI Holdings* was grounded

in the defendants' contractual duty to defend claims against the insured in any United States

forum which, in that case, was Kansas.  Here, THAN's claims against the insureds are not

grounded so much in the defendants' alleged duty to defend any particular claim against THAN,

but rather in their alleged duties to indemnify THAN and to pay THAN's costs of defense for

the asbestos claims.  The claims against THAN which gave rise to this lawsuit consist of

approximately fourteen thousand asbestos claims which have been asserted to date against

THAN, and THAN anticipates that more claims will likely be asserted against it.  Only one of

those fourteen thousand asbestos claims was filed in Kansas, three claimants have asserted asbestos claims in other jurisdictions but live in Kansas, and twelve claimants worked in Kansas at the time of their alleged exposure to asbestos.  Despite the distinction between the different types of coverage considerations at issue in this case and those at issue in *OMI Holdings*, the court nonetheless agrees that the Tenth Circuit's rationale in *OMI Holdings* governs the court's minimum contacts analysis.  That is, defendants contracted to provide THAN with coverage in Kansas (and elsewhere) and, by doing so, created some contact with the state of Kansas.  Of course, this does not necessarily "implicate a strong connection between Defendants and the forum state." *Id.* at 1095.  Instead, the worldwide coverage clause "creates contacts which are qualitatively low on the due process scale." *Id.*  Moreover, this consideration is even more attenuated in this case than in *OMI Holdings* because here the thrust of the underlying claims are nationwide in scope with only a minimal percentage of those claims having any connection to the state of Kansas.

The second and somewhat related consideration in the court's minimum contacts analysis is that THAN's principal place of business is located in Lenexa, Kansas.[3]  Arguably,

---

[3] To be sure, although defendants attempt to dispute that THAN's principal place of business is located in Kansas, the court must resolve all factual disputes in favor of THAN. THAN has submitted an affidavit from its corporate secretary, Steven L. Carter, which states that THAN has maintained its corporate headquarters in Lenexa since 1994, and this would have included the relevant time period for insurance coverage from December 31, 1997, through December 31, 2001.

Moreover, because the minimum contacts analysis focuses on the extent to which the defendant has purposefully directed its conduct at the forum, the "official" nature of THAN as a Kansas resident (or not, as the case may be) is not particularly relevant to this aspect of the court's analysis in this case inasmuch as the record establishes that defendants have dealt with

this consideration provides a greater connection to the state of Kansas than was the case in *OMI Holdings*. In *OMI Holdings*, the insured was an Iowa corporation with its principal place of business in Minnesota and therefore, absent the underlying claim at issue, the insurers presumably would have had no contact with the state of Kansas. By contrast, in this case defendants agreed to insure Philips and its direct and indirect subsidiaries. These subsidiaries included THAN, which has its principal place of business in Lenexa, Kansas. Thus, in that sense this case is distinguishable from *OMI Holdings*.

Yet it is well established that "[a] contract between a nonresident and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton*, 375 F.3d at 1077 (citing *Burger King*, 471 U.S. at 473). In circumstances involving contractual obligations with a nonresident, "'parties who reach out . . . and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 473). In such a case, the "relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 479).

Precedent from the Supreme Court and the Tenth Circuit reaffirms that the mere fact that an insurer has contracted to provide coverage to an insured located in the forum state, standing alone, does not establish sufficient minimum contacts. Rather, the court must

---

Philips, not THAN, in any event.

evaluate the same types of considerations that it would evaluate in the context of any other contractual relationship.  In *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957), the Supreme Court held that the trial court's assertion of personal jurisdiction over the nonresident defendant insurer did not offend due process.   In that case, a California resident had purchased a life insurance policy from an Arizona corporation.  *Id.* at 221.  Years later, International Life Insurance Company in Texas assumed those insurance obligations and mailed a reinsurance certificate to the insured in California in which it offered to continue to insure him.  *Id.*  The insured accepted the offer and paid premiums from his California home to International Life Insurance Company in Texas until the time he died.  *Id.* at 222.  The Court held that the Due Process Clause did not preclude the California court from exercising jurisdiction over the life insurance company because "the suit was based on a contract which had a substantial connection with that State."  *Id.* at 223.  The Court noted that "[t]he contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died."  *Id.*  Subsequently, in *Rambo v. American Southern Insurance Co.*, 839 F.2d 1415 (10th Cir. 1988), the Tenth Circuit discussed the meaning of the Supreme Court's opinion in *McGee*.  In *Rambo*, the Tenth Circuit noted that due process requirements were satisfied in *McGee* "where a Texas insurance company's single contact with California was the solicitation of a reinsurance agreement in California and the acceptance of premiums mailed from California."  *Id.* at 1420.  The Tenth Circuit emphasized that in *McGee* the insured's presence in the forum state "was not the substantial connection, rather it was the insurance company's purposeful acts soliciting business in the forum state."  *Id.* at 1421 n.8.

10

*See also Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996) (in evaluating personal jurisdiction over a Danish insurer which was one of a large group of foreign insurance companies participating in a reinsurance pool, court must focus on the actions of the Danish insurer "in the negotiation and performance of the reinsurance agreement").[4]

In this case, THAN has presented no evidence to show that defendants purposefully directed their activities at Kansas either in issuing the Programme or in carrying out the Programme.   Issuance of the policies under the Programme was entirely a result of Philips working with European brokers and companies in securing worldwide coverage for it and its subsidiaries.   Philips is headquartered in The Netherlands.   The policies issued in connection with the Programme were placed with the insurers through a broker in Rotterdam, The Netherlands.   The policies were issued to Philips in The Netherlands.   THAN has not presented any argument, affidavits, or documents to suggest that defendants actually solicited business from THAN (as opposed to Philips), received premiums from THAN, or were necessarily even aware of THAN's existence or presence in Kansas.   Additionally, the policies at issue state that they are to be interpreted in accordance with the laws of The Netherlands and that all parties agree to submit to the jurisdiction of the courts of The Netherlands.   The parties' actual course

_____

[4] Other courts have taken a different view of the Supreme Court's holding in *McGee*. *See, e.g.*, *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319-20 (11th Cir. 2004) (noting that since the Supreme Court's decision in *McGee* it has been the law of the Eleventh Circuit that a company with insurance obligations in a state in which it has no other business has submitted to the jurisdiction of that state's courts).

11

of dealing relating to coverage for the underlying asbestos claims reveals a similarly European focus. Philips first provided notice of the asbestos claims from its offices in The Netherlands to the lead carrier located in The Netherlands. All dealings relating to the policies and coverage for the asbestos claims against THAN took place either in The Netherlands or Switzerland. Thus, the fact that THAN happens to be insured as a subsidiary of Philips and the fact that THAN happens to be located in Kansas is the type of random, fortuitous, and attenuated contact for which the minimum contacts analysis is designed to preclude jurisdiction because it is the result of unilateral activities taken by someone else (namely Philips, PENAC, and/or THAN), and not the defendants. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else.").

In sum, then, THAN has not established that defendants have purposefully directed their activities at Kansas residents such that the minimum contacts inquiry is satisfied by virtue of issuing the policies under which THAN is an insured. THAN has, however, established that such minimum contacts exist by virtue of the fact that defendants provided worldwide coverage for the asbestos claims, a small percentage of which involve Kansas claimants, albeit the quality of those contacts is extremely low on the due process scale given that the thrust of THAN's claim is for nationwide coverage and only a very small percentage of those claims have any connection to the state of Kansas.

    **2.**       **Traditional Notions of Fair Play and Substantial Justice**

In analyzing whether a court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court determines whether its "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quotation omitted); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 1826 (2005). In undertaking this analysis, the court considers: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Pro Axess*, 428 F.3d at 1279-80 (quotation omitted). The minimum contacts and reasonableness inquiries are complementary such that they evoke a sliding scale: the weaker the showing of minimum contacts the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction and, vice versa, a borderline showing of minimum contacts may be fortified by an especially strong showing of reasonableness. *Id.* at 1280; *Benton*, 375 F.3d at 1079. Where a plaintiff has demonstrated that the defendant purposefully directed its activities at the forum state, the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Pro Axess*, 428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 477).

### a.   Burden on Defendant of Litigating in the Forum

13

"The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction . . . .  When the defendant is from another country, this concern is heightened and great care and reserve should be exercised before personal jurisdiction is exercised over the defendant."  *Pro Axess*, 428 F.3d at 1280 (quotations omitted).  Yet, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where [the defendant] engaged in economic activity."  *Id.* (same).

This factor does not weigh in either direction.  Some burden on the defendants would certainly exist because they consist of thirteen insurance companies located in Europe.  Also, they issued the Programme to Philips, which is headquartered in The Netherlands.  And, they would be forced to litigate the dispute in a foreign forum that is unfamiliar with the law of The Netherlands which the parties have chosen to govern their coverage dispute.  This burden on the defendants, however, is attenuated by the fact that they are large, sophisticated companies who chose to do business on a worldwide basis by providing insurance coverage to Philips and its subsidiaries.  In fact, many of the defendants are routinely involved in litigation throughout the United States.  Therefore, they undoubtedly are familiar with the burdens of litigating in foreign countries and are perfectly capable of litigating the case here.  Furthermore, modern conveniences such as e-mail, facsimiles, and video conferencing minimize the worldwide litigation burdens to which these defendants' are likely accustomed.  Thus, the court is unpersuaded that this case involves circumstances in which forcing the foreign defendants to litigate their dispute in Kansas would prove "'gravely difficult and inconvenient.'" *Pro Axess*,

14

428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 478) (finding the burden on a defendant headquartered in France to litigate dispute in Utah was not gravely difficult and inconvenient).

<b>b.      Forum State's Interest in Adjudicating the Dispute</b>

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998). In *OMI Holdings*, the Tenth Circuit held that this factor "weighs heavily in favor of Defendants" where neither the plaintiff nor defendants were Kansas residents. *Id.* In contrast, in this case THAN is a Kansas resident with its principal place of business in Kansas. By way of background, from 1961 to 1981 THAN was a manufacturer, marketer, and distributor of chemicals with its principal office located in Kansas City, Kansas. THAN is alleged to have distributed asbestos during that time period. The majority of its operations were sold to third parties in the early 1980s. Since then, its primary function has been to satisfy existing liabilities, including asbestos liabilities, and perform environmental remediation services in connection with its own environmental liabilities. It also occasionally handles, for a fee, the environmental liabilities of affiliated companies. THAN has six employees in its Lenexa office and its business activities take place primarily in that office. Its business activities with respect to the underlying asbestos claims and environmental remediation efforts take place in that office. Because of THAN's existence in Kansas, Kansas has an interest in providing a forum in which THAN can seek redress for injuries allegedly caused by defendants wrongfully failing to provide THAN with coverage for the asbestos claims.

15

Notwithstanding THAN's connection to Kansas, defendants contend that the court should not view THAN as a Kansas resident because THAN is owned entirely by out-of-state entities. Specifically, THAN is a Delaware limited liability company. Its parent company, PENAC, a Delaware corporation with its principal place of business in New York, is a 99.5% owner of THAN. In support of this argument, defendants cite case law in which courts have held that the citizenship of a limited liability company is assessed based upon the citizenship of its members. *See, e.g.*, *Tilzer v. Davis, Bethune & Jones, LLC*, No. 03-2661, 2004 WL 825289, at *1-*3 (D. Kan. Apr. 15, 2004). But this principle of law applies to determining the citizenship of a limited liability company for purposes of evaluating whether the parties are completely diverse such that diversity jurisdiction exists. Here, whether diversity jurisdiction exists is not at issue. Furthermore, defendants have not cited any cases or any principle of law under which the court could translate this principle to discount a forum state's interest in resolving a dispute for due process purposes. Thus, the court finds this argument unavailing.

A state may also have an interest in adjudicating a dispute between two non-residents where the defendants' conduct affects forum residents. *OMI Holdings*, 149 F.3d at 1096. The court is not persuaded that this consideration carries much weight. Although one of the underlying asbestos lawsuits was filed in Kansas, three Kansas residents are claimants in other states, and twelve claimants worked in Kansas, there has been no showing made of the extent to which resolution of the insurance dispute at issue in this lawsuit will impact their chances of recovery. Thus, the extent to which resolution of this lawsuit might impact forum residents' ability to recover from THAN is unclear.

16

"The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Id.* Although THAN is a Kansas resident, the parties agree that the law of The Netherlands will govern their dispute. On balance, then, this factor does not weigh in favor of either party. *See Benton*, 375 F.3d at 1079 (this factor did not weigh heavily in favor of either party where the plaintiff was a Colorado resident but Canadian law would govern the parties' dispute).

### c.   Plaintiff's Interest in Convenient and Effective Relief

"This factor hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *Pro Axess*, 428 F.3d at 1281 (quotation omitted). It "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing [the plaintiff] to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* (quotation omitted).

In this case, this factor weighs against finding that exercising jurisdiction over defendants would be reasonable because THAN may receive convenient and effective relief in The Netherlands. THAN characterizes the claims in this case as a coverage action that centers around the asbestos claims. Nonetheless, a necessary predicate determination to those coverage issues is whether defendants' purported rescission of the Programme was effective and this determination is already underway in legal proceedings initiated by defendants (other than XL) in The Netherlands. The Programme contains choice-of-law and forum selection clauses which state that this dispute will be governed by the law of The Netherlands and that all parties to the Programme submit to the jurisdiction of The Netherlands. Thus, The

17

Netherlands would provide THAN with a forum for obtaining convenient and effective relief. In fact, if this court were to exercise jurisdiction over this case and decline to enforce the forum selection clause as mandatory, an issue could later arise regarding the enforceability of the judgment of this court in the courts of The Netherlands. Of course, this would result in entirely inconvenient and ineffective relief for THAN.

THAN nonetheless contends that Dutch courts would provide less convenient and effective relief than this court. THAN contends that many of the issues in dispute will involve documents and witnesses located throughout the United States. While this may be true, it does not change the fact that the threshold determination regarding the propriety of defendants' rescission could render this evidence irrelevant. Also, THAN contends that many of the issues that could become important in this case, such as the reasonableness of defense costs and settlements, would be foreign to a Dutch court which would not be able to appreciate the realities of the United States tort system. The court is sympathetic to THAN's concerns in this regard, but THAN certainly has not established that its recovery would be inadequate under Dutch law or that the burden of litigating these issues there would be so inadequate as to foreclose THAN from pursuing such a lawsuit. Moreover, while there may be difficulties attendant to litigating this lawsuit in The Netherlands, litigating it here would raise difficulties of at least equal magnitude with respect to evidence regarding the propriety of rescission and the application of Dutch law.

In sum, the court is persuaded that plaintiff's interest in obtaining convenient and effective relief favors this court declining to exercise jurisdiction. *See, e.g.*, *Benton*, 375 F.3d

at 1079 (concluding this factor weighed in favor of the defendant Canadian corporation where Canadian law governed the lawsuit and the plaintiff had not established that litigating the matter in Kansas would cause him undue hardship); *OMI Holdings*, 149 F.3d at 1097 (concluding that this factor weighed in favor of the defendant Canadian corporation where the insured was a subsidiary of a Canadian corporation, defendants entered into the insurance contracts with the Canadian parent corporation in Canada, the parties agreed that Canadian law would govern their dispute, and little evidence was located in Kansas).

### d. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor asks "whether the forum state is the most efficient place to litigate the dispute." *Pro Axess*, 428 F.3d at 1281 (quotation omitted). This inquiry depends upon "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (quotation omitted).

On balance, these factors weigh against exercising jurisdiction in this case. Witnesses and evidence as to the rescission action are likely to be located predominantly in Europe where the Programme was issued to Philips. On the other hand, witnesses and evidence relating to coverage issues are likely to be located more predominantly in Kansas and throughout the United States. THAN employees and former employees are likely to be located in and around Kansas. But many of the parties involved in the underlying asbestos lawsuits are located throughout the United States; this includes counsel, claimants, and other witnesses who have

19

knowledge of THAN's alleged distribution of raw asbestos.  THAN has made no showing that these categories of witnesses are necessarily centralized in Kansas.  Given the minimal proportion of the underlying asbestos claims bearing any relationship to Kansas, the witnesses relating to those underlying cases are likely equally small.

The alleged wrong underlying the lawsuit occurred in Kansas.  THAN was denied insurance coverage.  Defendants' attempt to characterize the alleged breach as occurring in The Netherlands is unpersuasive.  While defendants had a contractual obligation to insure Philips, they were also obligated to insure THAN.  This lawsuit is based on defendants' failure to provide coverage to THAN, not Philips.

The substantive law of The Netherlands will govern this case.  This factor weighs heavily in favor of finding that this case would be more efficiently resolved in The Netherlands rather than in Kansas.  This fact is illustrated by the court's discussion below regarding enforceability of the forum selection clause.  This case not only involves the application of the law of a foreign country, but also law that is written in a foreign language.  It would be much more efficient for a court in The Netherlands to resolve such issues than for this court to attempt to guess at the laws of a foreign legal system with which it is unfamiliar.  Of course, a court in The Netherlands would not be as familiar as this court with the realities of the United States tort system.  But it is the substantive law of The Netherlands that will govern disputes concerning interpretation of the insurance policies at issue, and that is the inquiry pertinent to the factor in question here.

20

Lastly, the court believes that exercising jurisdiction over this lawsuit would create piecemeal litigation rather than avoid it.   If this court were to exercise jurisdiction, the rescission actions would be proceeding in The Netherlands simultaneously with this coverage lawsuit, with resolution of the rescission lawsuit potentially obviating the need for this coverage action.   Such a result would be an entirely inefficient resolution of the parties' controversies.   Moreover, a forum is available where THAN could join all of the defendants in The Netherlands.

Under these circumstances, from the perspective of the judicial system as a whole, litigating this case in The Netherlands would clearly be more efficient than in Kansas.   *See, e.g.*, *OMI Holdings*, 149 F.3d at 1097 (finding this factor weighed in favor of declining to exercise jurisdiction where the witnesses were largely located in Canada and states other than Kansas; the insurance policies were negotiated, drafted, and executed in Canada and governed by Canadian substantive law; and the plaintiff could have joined all of the insurance companies in Canada).

### e.    States' Interest in Furthering Fundamental Substantive Social Policies

This factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations."   *Pro Axess*, 428 F.3d at 1281 (quotation omitted; brackets in original).   The Supreme Court has cautioned that "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."   *Id*. (quotation omitted).   In evaluating the extent to

which the exercise of personal jurisdiction over a foreign defendant would interfere with another country's sovereignty, the court looks at "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign national's citizen chose to conduct business with a forum resident." *Id.* (quotation omitted).

Exercising personal jurisdiction over defendants in Kansas would affect the policy interests of The Netherlands. All of the defendants are European insurance carriers and almost half of them have their principal places of business in The Netherlands. The other defendants are located in countries near The Netherlands. They entered into insurance contracts in The Netherlands with THAN's parent's parent company, Philips, which is one of the largest companies in The Netherlands. The substantive law of The Netherlands will govern this dispute. The court is required "to give deference to the international nature of this case." *Benton*, 375 F.3d at 1080. Under these circumstances, The Netherlands has a sovereign interest in interpreting its laws and resolving disputes involving its citizens. *See, e.g.*, *id.* (weighing this factor against a finding of personal jurisdiction where, although the defendant chose to conduct business with a resident of Colorado, the defendant was a Canadian corporation and Canadian law would govern the dispute); *OMI Holdings*, 149 F.3d at 1098 (same, in a case involving circumstances similar to those of this case).

### f.    Weighing of Reasonableness Factors

In summary, the court has already found that defendants' contacts with Kansas were extremely limited, barely satisfying the minimum contacts standard in an even more attenuated fashion than was the case in *OMI Holdings*. Consequently, defendants do not need to make a

22

particularly compelling showing to defeat jurisdiction under the sliding-scale analysis that the court must apply.   In light of the truly minimal contacts, exercising personal jurisdiction over defendants would offend traditional notions of fair play and substantial justice largely because of the international nature of this dispute which implicates the policy interests of The Netherlands combined with the interstate judicial system's interest in efficiently resolving this dispute to avoid duplicative litigation.   *See, e.g.*, *OMI Holdings*, 149 F.3d at 1098 (holding jurisdiction over foreign insurer would be unreasonable and inconsistent with due process); *see also Nationwide Mut. Ins. Co. v. Trug Int'l Ins. Co.*, 91 F.3d 790, 796-97 (6th Cir. 1996) (same, where the Danish defendant's participation in a reinsurance pool arose from its attendance at a "Reinsurance Rendezvous" in Monte Carlo which the insured had attended).

### 3.      THAN's Request for Discovery

The last issue the court must address with respect to personal jurisdiction is the fact that THAN requests jurisdictional discovery.   "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (quotation omitted).   The court, however, is vested with broad discretion in determining whether discovery should be allowed.   *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1298-99 (10th Cir. 2004).   That discretion is abused when the denial results in prejudice to the plaintiff.   *Sizova*, 282 F.3d at 1326.   Prejudice exists "where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* (quotation omitted).

23

In this case, discovery is unwarranted because the pertinent facts bearing on the jurisdictional inquiry are relatively undisputed.   The only disputed factual issue is whether THAN's principal place of business is in Kansas, and the court has resolved that issue in favor of THAN.   In support of THAN's request for discovery, it argues that such discovery would likely reveal that defendants engage in systematic and continuous business in the United States so as to be subject to this court's general jurisdiction and that THAN has uncovered extensive evidence of defendants' business activities in the United States.   Of course, the relevant inquiry here is defendants' contacts with Kansas, not the United States.   Consequently, THAN's arguments on this point are irrelevant.   The court held a hearing on defendants' motions to dismiss at which time the parties had an adequate opportunity to present argument on the issues presented in defendants' motions.   The court carefully considered THAN's arguments and is satisfied that the factual record is complete such that the court can fairly resolve the jurisdictional issue without any prejudice to THAN.   Accordingly, THAN's request for jurisdictional discovery is denied.

**B.**     **Forum Selection Clause**

Even if the court could exercise jurisdiction over defendants without violating constitutional due process principles, it would dismiss this case based on improper venue by enforcing the forum selection clause contained in all of the policies issued in connection with the Programme under the law of The Netherlands.   The relevant provision provides as follows:

> JURISDICTION
> Any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this Policy is hereby understood and

agreed by both the Insured and the Insurers to be subject to the law of the Netherlands. Each party agrees to submit to the jurisdiction of any court of competent jurisdiction within The Netherlands and to comply with all requirements necessary to give such Court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such Court.

The first sentence is a choice-of-law clause. The second is a forum selection clause. The third sentence is related to the choice-of-law clause. In this case, each of the sentences is interrelated in the sense that enforcement of the choice-of-law clause impacts the extent to which the forum selection clause is enforceable.

To the extent that Tenth Circuit or Kansas law might apply to enforcement of the forum selection clause, the parties do not discuss which of the two is controlling. The court finds no material discrepancies between them and therefore finds it unnecessary to choose between the two. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320-21 (10th Cir. 1997) (declining to choose between state law and federal common law in enforcing forum selection clause where the parties did not discuss the issue and the court found no material discrepancies between the two). Under either set of laws, a forum selection clause is considered mandatory if it contains clear language showing that jurisdiction is appropriate only in the designated forum. *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002); *Thompson v. Founders Group Int'l*, 20 Kan. App. 2d 261, 269, 886 P.2d 904, 910 (1994). In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere. *BMW*, 314 F.3d at 498; *Thompson*, 20 Kan. App. 2d at 269, 886 P.2d at 910. Where the forum selection

25

clause only specifies jurisdiction, the clause generally is not mandatory absent some further language indicating the parties' intent to make venue exclusive. *BMW*, 314 F.3d at 499. In this case, the provision authorizes jurisdiction in The Netherlands without prohibiting litigation elsewhere or containing any other language indicating that The Netherlands was intended to be the exclusive forum for litigation. Thus, the clause must be regarded as permissive, rather than mandatory, if the law of the Tenth Circuit or the state of Kansas applies to this issue.

Defendants, however, contend that the law of The Netherlands applies to this issue and that Dutch courts would regard the forum selection clause as mandatory and enforceable. Generally, the court must consider a choice-of-law issue only if there is a true conflict between United States law and the relevant foreign law. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223 (10th Cir. 2000). "A true conflict exists only when a person subject to regulation by both states cannot comply with the laws of both." *Id.* For the reasons explained above, the court finds that the forum selection clause is permissive under Tenth Circuit and Kansas law. But, for the reasons explained below, it is mandatory under Dutch law. Because the parties cannot comply with both sets of laws, a true conflict exists such that the court must resolve this threshold choice-of-law issue.

In a diversity case such as this one, the court applies the substantive law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495-97 (1941); *Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Kansas is the forum state and, as to contract-based claims, Kansas choice of law rules honor an effective choice of law by contracting parties. *Pepsi-Cola Bottling Co.*, 431 F.3d

26

at 1255 (enforcing choice of law provision and applying New York law to contract claims); *O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1194 (10th Cir. 2004) (same, applying Delaware law); *Brenner v. Oppenheimer & Co., Inc.*, 273 Kan. 525, 540, 44 P.3d 364, 375 (2002) ("Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement.").    Although Kansas courts have not been squarely confronted with the issue of what law applies to the enforceability of a forum selection clause when a combined choice-of-law/forum selection clause exists, the court believes that the Kansas Supreme Court would find persuasive, and hence follow, other cases in which courts have not hesitated to apply the parties' contractually chosen law to determining the enforceability of a forum selection clause. *See, e.g., Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (enforcing Ohio choice-of-law provision and applying Ohio law to determining the enforceability of a forum selection clause); *Lambert v. Kysar*, 983 F.2d 1110, 1118-19 (1st Cir. 1998) (predicting that Massachusetts courts would enforce Washington choice-of-law provision; applying Washington law to determining the enforceability of a forum selection clause); *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 358 (3d Cir. 1986) (enforcing Maryland choice-of-law provision and applying Maryland law to determining the enforceability of a forum selection clause); *see also* Jason Webb Yackee, *Choice of Law Considerations in the Validity & Enforcement of International Forum Selection Agreements: Whose Law Applies?*, 9 UCLA J. Int'l L. & Foreign Aff. 43, 46 (2004) (courts faced with an international foreign selection agreement should apply basic conflict of law principles and, first and

foremost, examine whether the parties have chosen the law to govern their forum selection agreement).   Thus, under Kansas law, the parties' contractually chosen law, which is the law of The Netherlands, governs interpretation of the forum selection clause.[5]

Moreover, analyzing the enforceability of the forum selection clause under the law of The Netherlands is consistent with the parties' intent, as manifested by the plain language of the provision.   It provides that "[a]ny dispute concerning the interpretation of the terms [and] conditions . . . contained in [the] Policy" shall be subject to the law of The Netherlands.   The forum selection clause is such a "term" or "condition" contained in the policies.   If that were not enough, the third sentence of the provision further provides that "[a]ll matters arising hereunder shall be determined in accordance with the law **and practice** of such Court" (emphasis added), meaning a court in The Netherlands.   By its plain terms, then, this clause provides not only that interpretational issues regarding the terms and conditions of the policies are governed by the law of The Netherlands, but also that all matters arising under the policies is to be determined in accordance with the "practice" of the courts in The Netherlands.   Thus, this provision unambiguously states that the issue of the enforceability of the forum selection

---

[5] Even in the absence of the choice-of-law provision, Kansas courts follow the lex loci contractus rule when there is a conflict of laws dealing with the interpretation of an insurance contract, which means that "the law of the state where the insurance contract is made controls." *Safeco Ins. Co. of Am. v. Allen*, 262 Kan. 811, 822, 941 P.2d 1365, 1372 (1997).   The parties all seem to agree that the Programme was issued to Philips in The Netherlands through a Dutch broker.   Therefore, the insurance policies were made in The Netherlands and consequently the law of The Netherlands would apply to this issue even without the choice-of-law provision. THAN has made no showing that application of the law of The Netherlands would violate Kansas public policy.

28

clause is to be determined in accordance with the laws and practices of the courts in The Netherlands.   As such, applying the law of The Netherlands to this issue is consistent with the parties' intent.

THAN's argument to the contrary is unpersuasive.   In support of this argument, THAN cites a portion of the Tenth Circuit's opinion in *BMW* in which the court reasoned as follows:

> Although the district court obviously was correct in noting that German courts are better prepared to apply German law than American courts, the parties' choice of law provision (even assuming that it is binding and controls all of plaintiff's claims) appears to carry little, if any, weight in determining whether the parties' forum selection clause was intended as mandatory or permissive.

314 F.3d at 501.   The Tenth Circuit made this statement, however, in evaluating whether the forum selection clause at issue was mandatory or permissive, not in determining what law governed the enforceability of the forum selection clause.   In fact, the Tenth Circuit specifically noted that the parties did not challenge the district court's application of federal common law.   *Id.* at 497 n.4.   Interestingly, at the district court level the district court noted that the parties' agreement contained a German choice-of-law provision and that the parties agreed that German law applied.   164 F. Supp. 2d 1260, 1266 n.7.   But the parties in that case, like in this case, submitted competing affidavits from German attorneys one of which stated the forum selection clause was mandatory and the other, "[n]ot surprisingly," stated that it was permissive.   *Id.*   The court stated that it was "indisposed to make conclusions regarding German law in the absence of an in-depth comparative law analysis."   *Id.*   The district court then retreated to the *Erie* question of whether federal or state law applied (an issue which is irrelevant in this case because there are no material discrepancies between Kansas and federal

law) and determined that the issue of the enforceability of a forum selection clause is a procedural issue governed by federal common law.   This court disagrees with the approach taken by the district court in rejecting the application of German law, but that result perhaps can be best understood as the result of the parties' failure in that case to present meaningful evidence regarding the applicable German law.   Thus, this court can certainly appreciate the unenviable position of the district court in *BMW*.   In this case, the parties have likewise presented competing affidavits on the issue of the enforceability of the forum selection clause under the law of The Netherlands.   This case is different, however, because here the parties' competing affidavits are sufficiently detailed, explanatory, and informative that they provide the court with an adequate record to attempt to decide this issue under the law of The Netherlands.

In support of the Certain Insurers' motion to dismiss, they submitted a declaration from Stijn Franken.   Mr. Franken is counsel for Certain Insurers in the actions pending against Philips, PENAC, and THAN in The Netherlands.   Mr. Franken opines that the forum selection clause will vest jurisdiction of the Amsterdam proceedings in the Dutch court as a matter of European Union regulations or, alternatively, will require the Dutch court to exercise jurisdiction over the Amsterdam proceedings as a matter of the law of The Netherlands.   Mr. Franken's declaration is, candidly, not helpful to the court in determining whether the jurisdiction clause is mandatory or permissive.

In support of Royal's motion to dismiss, it submitted a declaration from Jeroen Fleming.   Mr. Fleming is counsel for Royal in the action pending against Philips and THAN in

The Netherlands.  He opines that the Amsterdam Court would be considered to have exclusive jurisdiction to hear any disputes between the parties to the 1998 policies.[6]  He explains that under Article 23(1) of the European Council Regulation No. 44/2001 of 22 December 2000, when one of more parties is domiciled in a European Community member state and the parties have agreed that a court of a European Community member state is to have jurisdiction (criteria which are satisfied here), that court shall have jurisdiction and that jurisdiction shall be exclusive unless the parties have agreed otherwise.  He further explains that this regulation was not in force at the time the 1998 policies became effective, but that Article 66 of the European Council Regulation states that it applies to claims filed after 1 March 2002.  Before that effective date, the European Execution Treaty of 27 September 1968 (the Brussels Convention) formed a part of Dutch law, and Article 17, Paragraph 1 of the Brussels Convention essentially provided for the same legal conclusion as Article 23 of the European Council Regulation.

In response to these affidavits, THAN submitted an affidavit from Maurice Valentijn Polak.  Mr. Polak is admitted to the bar in The Netherlands.  He is a professor at the University of Leiden and also practices law with De Brauw Blackstone Westbroek in The Netherlands.  He opines that it is far from clear that this clause would vest jurisdiction exclusively in Dutch courts so as to oust this court's jurisdiction.  He explains that under the Regulation, when a court is faced with the question of whether a specific jurisdiction is exclusive or non-

---

[6] Royal subscribed to the Programme in 1998 only.

31

exclusive, it must interpret the clause and attempt to reconstruct the parties' will in agreeing on the jurisdiction clause.   Thus, the effect of Article 23(1) of the Regulation is that it creates a rebuttable presumption in favor of an exclusive jurisdiction clause.   Moreover, Article 17 of the Brussels Convention, which was the governing law in force at the time of the 1998 policies, did not contain a rebuttable presumption in favor of an exclusive jurisdiction clause. Thus, he reasons that it appears that the "parties have agreed otherwise," i.e., to a non-exclusive jurisdiction clause, essentially because jurisdiction would not have been exclusive under the Brussels Convention which was in effect at the time of contracting.   Mr. Polak criticizes Mr. Fleming's affidavit for failing to specifically discuss the precise language of Article 17 of the Brussels Convention which was in force at the time of contracting.

In response to Mr. Polak's affidavit, Certain Insurers submitted a twenty-four page affidavit from Th. M. de Boer.[7]   Mr. DeBoer explains that a 1979 decision from the European Court of Justice (*Sanicentral v. Collins*) held that the date on which proceedings are instituted

---

[7] THAN's Motion to Strike the Declaration of Th. M. de Boer (Doc. 50) is granted in part and denied in part.   It is denied in the sense that the court will not strike Mr. de Boer's affidavit but it is granted as to THAN's alternative request to submit a surreply brief.   The court agrees with THAN that the nature of Mr. de Boer's affidavit is such that it should have been submitted in connection with Certain Insurers' motion to dismiss.   But THAN had an adequate opportunity to respond to Mr. de Boer's affidavit at the hearing on the motions to dismiss and by virtue of being granted leave to file a surreply brief which contained a declaration from Professor Hans Smit rebutting Mr. de Boer.   Professor Smit's declaration is not sworn and therefore the court could disregard it.   Nevertheless, the court will consider its contents because the court has granted Certain Insurers a similar degree of latitude by considering the contents of the belated affidavit from Mr. de Boer, and also because Mr. Smit's declaration is in relevant part essentially duplicative of Mr. Polak's affidavit.

is decisive for the applicability of the European legislation on choice of forum clauses and the Dutch Supreme Court has adopted the same view.   Since all proceedings (both in The Netherlands and the United States) were instituted after March 1, 2002, there is no doubt that Article 23 of the Regulation rather than Article 17 of the Convention applies.   He provides further information in which he discusses case law bearing on the exclusive or non-exclusive nature of the clause.   He concludes that a Dutch court would read the jurisdiction clause as an "exclusive" forum selection clause rather than a "permissive" service-of-suit clause.   He characterizes Mr. Polak's affidavit as speculative and clearly erroneous.

Royal also submitted an affidavit from Mr. Fleming in response to THAN's affidavit from Mr. Polak.   Like Mr. de Boer, he explains that Article 23 of the European Counsel Regulation governs because litigation was commenced after March 1, 2002.   Furthermore, he agrees with Mr. Polak that Article 23 creates a rebuttable presumption in favor of exclusive jurisdiction, but that the appropriate inquiry in determining whether this presumption has been rebutted is to examine whether the jurisdiction clause contains any language to suggest that the parties intended to agree upon a non-exclusive jurisdiction clause, and here the clause contains no such language.   He concludes that "it is difficult to understand Mr. Polak's position."

In THAN's surreply, it submitted a twenty-seven page declaration from Professor Hans Smit.   Mr. Smit practiced briefly in The Netherlands in the 1950s, but has largely been located in New York since 1956 as a professor of law at Columbia University with an emphasis on international law.   Professor Smit essentially reiterates the opinion of Mr. Polak, which is that

the forum selection clause must be interpreted according to the parties' intent at the time of contracting and the clause was clearly non-exclusive before the advent of Article 23.

The court has thoroughly considered the parties' respective views on Dutch law. Having done so, the court wishes to emphasize that it is not nor does it purport to be an expert in the law of The Netherlands. Nonetheless, the court believes that the following principles emerge from the parties' submissions. First, Article 66 of the European Council Regulation No. 44/2001 provides that the Regulation applies to claims filed after March 1, 2002, which is the case here. Second, Article 23(1) of the Regulation raises a rebuttable presumption that the forum selection clause is exclusive unless the parties have agreed otherwise. And, third, THAN has not effectively rebutted this presumption. That is, THAN has presented no persuasive evidence to suggest that the parties "agreed otherwise," i.e., that they agreed the clause would be non-exclusive. At best, THAN has demonstrated that the parties' intent was not clear in light of Article 17 of the Brussels Convention which was in effect at the time of contracting. But, even then, this establishes nothing more than that the parties' intent was unclear, which is insufficient to rebut the presumption. THAN was not even involved in the process of issuance of the Programme to Philips, and therefore it certainly could not have "agreed" that the provision would be non-exclusive. And, THAN has not submitted any evidence to suggest that Philips or any of the defendants actually believed that the clause would be non-exclusive.[8] Accordingly, the court concludes that the forum selection clause is

_____

[8] Because THAN has failed to submit any evidence disputing this as an issue of fact (as opposed to an issue of law), its request for discovery on the issue of the parties' intent is

mandatory under the law of The Netherlands.  Thus, even if the court had personal jurisdiction over defendants, it would enforce the forum selection clause as mandatory under the law of The Netherlands and dismiss this case for improper venue.

**C.**     **Forum Non Conveniens**

Although the court has already concluded that this case should be dismissed for lack of jurisdiction and for improper venue, it will address one other argument raised by the defendants in order to make a more complete record.  In that regard, the court finds defendants' *forum non conveniens* argument to be unpersuasive.    Certainly, the two threshold determinations in the *forum non conveniens* analysis are satisfied inasmuch as the parties agree, first, that there is an adequate alternative forum in which the defendants are amenable to suit and, second, that foreign law applies.  *See Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (setting forth these two threshold criteria).  But, normally there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum and that presumption is overcome only if the private and public interest factors clearly point towards trial in the alternative forum.  *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).

> The private interest factors to be considered are: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and

---

denied.  Moreover, any such discovery would be futile because of the court's conclusion that it lacks jurisdiction in any event.

inexpensive.    The  public  interest  factors  include:  (1)  administrative  difficulties
of  courts  with  congested  dockets  which  can  be  caused  by  cases  not  being  filed
at  their  place  of  origin;  (2)  the  burden  of  jury  duty  on  members  of  a  community
with  no  connection  to  the  litigation;  (3)  the  local  interest  in  having  localized
controversies  decided  at  home;  and  (4)  the  appropriateness  of  having  diversity
cases  tried  in  a  forum  that  is  familiar  with  the  governing  law.

*Id.* (citations omitted).

In  this  case,  the  court  has  evaluated  the  various  private  and  public  interest  factors

bearing  on  the  *forum  non  conveniens*  analysis  and  concludes  that  they  do  not  clearly  point

towards  trial  in  The  Netherlands.    The  private  interest  factors  do  not  weigh  in  favor  of  either

forum.    The  rescission  issue,  which  involves  issues  surrounding  issuance  of  the  policies,  would

be  more  conveniently  litigated  in  The  Netherlands  whereas  the  coverage  issue,  which  involves

issues  surrounding  the  asbestos  claims,  would  be  more  conveniently  litigated  in  Kansas  (or  at

least  in  the  United  States).    The  evidence  that  THAN  needs  to  prove  coverage  issues  is  largely

located  in  the  United  States;  therefore,  litigating  the  coverage  issues  in  Kansas  would  provide

relatively  greater  ease  of  access  to  sources  of  proof,  compulsory  process  for  compelling

attendance  of  witnesses  would  be  more  readily  available,  and  the  cost  of  obtaining  attendance

of  non-party  witnesses  would  be  less.    On  the  other  hand,  the  evidence  that  defendants  need  to

prove  their  defense  to  coverage  is  largely  located  in  Europe;  therefore,  litigating  the  rescission

issue  in  The  Netherlands  would  provide  relatively  greater  ease  of  access  to  sources  of  proof,

compulsory  process  for  compelling  attendance  of  witnesses  presumably  would  be  more

readily  available,  and  the  cost  of  obtaining  attendance  of  non-party  witnesses  would  be  less.

The  public  interest  factors  also  weigh  in  favor  of  both  parties  inasmuch  as  the  burden  of  jury

36

duty with respect to issues relating to issuance of the policies to Philips would be unwarranted, yet it would be warranted to ensure coverage for a Kansas resident.   Local interest considerations weigh similarly.   Ultimately, the court's conclusion would rest on the fact that it is not familiar with the governing law of The Netherlands and consequently is not particularly eager to delve into those legal issues, but this consideration alone is insufficient for dismissal based on *forum non conveniens*. *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 994 (10th Cir. 1993) (citing *Piper Aircraft*, 454 U.S. at 260 n.29 (difficulty of applying foreign law "alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate").   Accordingly, this aspect of defendants' motions is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions to dismiss (Docs. 24, 26 & 29) are granted and this case is dismissed.

**IT IS FURTHER ORDERED** that THAN's motion to strike (Doc. 50) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that defendants' motion for a temporary stay (Doc. 59) is denied as moot.

**IT IS SO ORDERED** this 17th day of February, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge